***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are subject to and bound by the North Carolina Workers' Compensation Act and the Industrial Commission has jurisdiction over the case.
2. On the date of the alleged incident, an employer-employee relationship existed between the parties.
3. Everest Reinsurance Company was the carrier on the risk.
3. At the Deputy Commissioner's hearing, the parties submitted a Packet of Medical Records, which were admitted into the record and marked as Stipulated Exhibit (2), and a Packet of Industrial Commission Forms, which were admitted into the record and marked as Stipulated Exhibit (3).
4. The issues to be determined before the Full Commission are whether plaintiff sustained an injury by accident or specific traumatic incident in the course and scope of his employment with defendant-employer on or about February 2, 2001, whether plaintiff properly and timely reported his alleged injury without prejudice to defendants, what plaintiff's average weekly wage is and what benefits, if any, plaintiff is entitled to receive, and, whether defendants are entitled to a credit for short term disability benefits plaintiff received from defendant-employer.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing, plaintiff was 45 years old and was born on May 15, 1959. Plaintiff has an 11th grade education and worked in construction prior to his employment with defendant-employer.
2. Plaintiff began his employment with defendant-employer in 1979. In January 2001, plaintiff's job with defendant-employer involved operating a plasma machine, which was used to recoat worn textile parts with a ceramic material.
3. In 1989, plaintiff underwent a L5-S1 diskectomy, but fully recovered from that procedure and was not experiencing chronic pain as of January 10, 2001.
4. On January 10, 2001, plaintiff placed a worn part into the plasma machine in order to apply powder and ceramic material. Plaintiff placed one end of a 30-pound roll, or tube-like part, into the machine while supporting the other end of the part with his right hand. Plaintiff then turned and reached with his left hand to crank in the head stock that would hold the roll in place. On this occasion when plaintiff turned and reached, he felt the immediate onset of a sharp pain in his back that continued down into his leg. Because of the pain, plaintiff braced himself and sat down. Plaintiff's pain did not dissipate and he was unable to complete his shift.
5. As he left work on January 10, 2001, plaintiff verbally notified Lyn Barnes, a manager, of his injury, although he did not explicitly inform him how it occurred. Plaintiff did not inform his immediate supervisor, Ben Vandargriff, of his injury on the date of its occurrence. Plaintiff also informed co-workers of his injury. Joe Little, a co-worker, recalled that plaintiff expressed the need to go home because of his back, but he could not recall the exact date and did not witness the incident described by plaintiff.
6. Plaintiff did not provide formal, written notice of his alleged work injury until October 31, 2002, when he filed an Industrial Commission Form 18. On the Form 18 and Form 33 Request for Hearing dated September 24, 2003, plaintiff used February 2, 2001 as the date of injury. Plaintiff explained at the Deputy Commissioner's hearing that after filing the Industrial Commission forms, he determined that February 2, 2001 was not the correct date and that he was injured on January 10, 2001. The Full Commission finds that such a discrepancy is not indicative of a lack of credibility, particularly when the injury involved the back, and the Full Commission accepts plaintiff's testimony as credible.
7. The Full Commission finds that plaintiff's delay in providing defendant-employer written notice of the injury is reasonably excused, as plaintiff informed Mr. Barnes of his injury on January 10, 2001. Defendants were not prejudiced by plaintiff's delay in providing formal, written notice because defendants had actual, verbal notice of the incident. Furthermore, defendant-employer's attendance calendar reflects an understanding that plaintiff was out of work on January 10, 2001 due to a back injury.
8. Steve Luther, defendant-employer's acting human resources manager, testified that he was aware of plaintiff's injury soon after it occurred because plaintiff stopped coming to work. Mr. Luther also explained that he decided to file for short-term disability benefits for plaintiff and not workers' compensation benefits because he was "under the impression from the beginning that it [plaintiff's injury] was not a specific injury that could be attributed to a day at work." Plaintiff subsequently received short-term disability benefits through a group insurance plan provided by defendant-employer. The short-term disability claim form filed by plaintiff indicates that his back pain developed on or about January 6, 2001 and that it was not related to his employment. At the Deputy Commissioner's hearing, plaintiff acknowledged his signature on the form, but testified that he did not recall completing it. Plaintiff received and continues to receive short-term disability benefits of $1,747.00 per month from a policy provided by defendant-employer.
9. Following his injury, plaintiff received medical treatment at Myers Park Internal Medicine on January 17, 2001. Records from this initial examination reveal that plaintiff reported back symptoms, and he was referred for an MRI and given work restrictions. In February 2001, plaintiff underwent an MRI at Myers Park Orthopaedics, which revealed a paracentral and rightward ruptured disk at the L4-5 level, with L5 nerve root impingement on both the left and right sides. Additionally, the MRI revealed that plaintiff had other bulging discs, but ones without clear nerve root impingement at the L3-L4 and L5-S1 levels. Other records from Myers Park Orthopaedics reveal that, in addition to reporting his prior 1989 surgery, plaintiff reported that his current symptoms began while he was leaning over at work in the performance of his duties.
10. Based upon the results of his MRI, plaintiff was released to return to light duty work. However, defendant-employer was not able to accommodate this restriction and the last date plaintiff worked in any capacity was February 2, 2001.
11. On June 4, 2001, Dr. Bruce Darden, an orthopedic surgeon, performed a L4-L5 decompression and a L3-L4 diskectomy. Although plaintiff experienced some relief from his symptoms immediately following the procedure, after a few weeks plaintiff's recovery reached a plateau. Thereafter, plaintiff was referred to Charlotte Pain Associates, where he was treated by Dr. Henry Okonneh, board certified internist, anestheologist, and pain specialist.
12. As of the Deputy Commissioner's hearing, Dr. Okonneh continued to treat plaintiff for his chronic lumbar back pain, which is the result of failed back surgery syndrome. The credible medical evidence of record is that plaintiff will continue to require pain management services for an indefinite period of time. Dr. Okonneh stated that plaintiff cannot sit for more than 30 to 60 minutes and that he has to change positions constantly during the day. Dr. Okonneh expressed doubt that plaintiff could sustain a job for any length of time due to these restrictions. He further stated that it was possible but not probable that plaintiff could perform sedentary work that would comply with the restrictions. Dr. Okonneh testified to a reasonable degree of medical certainty and the Commission finds that that the condition for which Dr. Okonneh is treating plaintiff and which prevents plaintiff from currently returning to gainful employment is causally related to the incident at work on January 10, 2001. Dr. Okonneh further stated that plaintiff has been at maximum medical improvement since he first treated plaintiff in November 2001.
13. Based on the totality of the credible evidence of record, plaintiff sustained a back injury during a judicially cognizable time period that was not the result of a gradual deterioration.
14. On January 10, 2001, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident of the work assigned.
15. The medical treatment received by plaintiff from Dr. Darden and Dr. Okonneh was reasonable and related to plaintiff's January 10, 2001 injury by accident.
16. As the result of his January 10, 2001 injury by accident in the form of a specific traumatic incident, plaintiff has been unable to earn any wages in his former position with defendant-employer or in any other employment for the period of February 3, 2001 through the present and continuing.
17. Based upon the best evidence of record, on January 10, 2001, plaintiff's average weekly wage was $681.85, yielding a compensation rate of $454.58.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On January 10, 2001, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff sustained a back injury during a judicially cognizable time period that was not the result of a gradual deterioration. Fish v. Steelcase, Inc., 116 N.C. App. 703, 707,449 S.E.2d 233, 237 (1994), cert. denied, 339 N.C. 737,449 S.E.2d 233, 237 (1994).
3. Plaintiff's delay in providing formal, written notice of his claim of back injury is reasonably excused and defendants were not prejudiced by the delay because defendants had actual notice of the incident on the day it occurred through plaintiff's verbal notification. N.C. Gen. Stat. § 97-22.
4. Based upon the best evidence of record, on January 10, 2001, plaintiff's average weekly wage was $681.85, yielding a compensation rate of $454.58. N.C. Gen. Stat. § 97-2(5).
5. As the result of his January 10, 2001 injury by accident in the form of a specific traumatic incident, plaintiff is entitled to total disability compensation at the rate of $454.58 per week for the period beginning February 3, 2001 continuing until plaintiff returns to work or until further Order of the Commission. N.C. Gen. Stat. § 97-29.
6. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of his compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief or tend to lessen plaintiff's period of disability, including ongoing pain management treatment by Dr. Okonneh. N.C. Gen. Stat. §§ 97-19;97-25.
7. Defendants are entitled to a credit against the ongoing total disability benefits to which plaintiff is entitled for prior payments of short-term disability benefits from a policy provided by defendant-employer. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorney's fees approved below, defendants shall pay plaintiff total disability compensation at the rate of $454.58 per week for the period beginning February 3, 2001 and continuing until plaintiff returns to work or until further Order of the Commission. All amounts accrued shall be paid in a lump sum.
2. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of his January 10, 2001 injury by accident in the form of a specific traumatic incident, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief or tend to lessen plaintiff's period of disability, including ongoing pain management treatment by Dr. Okonneh.
3. A reasonable attorney's fee of 25% of the compensation awarded in paragraph 1 of this Award is approved for plaintiff's counsel. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to plaintiff's counsel, with counsel for plaintiff receiving every fourth check thereafter.
4. Defendants are entitled to a credit against the total disability benefits to which plaintiff is entitled for prior payments of short-term disability benefits from a policy provided by defendant-employer.
5. Defendants shall pay the costs.
This 16th day of November 2005.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER